**ALASKA FISH SPOTTERS ASSOCIATION, Ron Gribble, Dennis Thacker, Jerry Mahony, Lee William Budde and Richard Sorenson, Appellants,**

v.

**STATE of Alaska, DEPARTMENT OF FISH AND GAME, and Board of Fisheries, Appellees.**

No. S–4540.

Supreme Court of Alaska.

Sept. 11, 1992.

---

William F. Brattain, II, and Anthony M. Sholty, Faulkner, Banfield, Doogan & Holmes, Juneau, for appellants.

Stephen M. White and Larri Irene Spengler, Asst. Attys. Gen. and Charles E. Cole, Atty. Gen., Juneau, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

The Alaska Fish Spotters Association and several individual fish spotters operating in Bristol Bay (Fish Spotters) challenged 5 Alaska Administrative Code (AAC) 06.378 (1991), which prohibits the use of aircraft to locate salmon during open commercial salmon fishing periods. The superior court upheld the regulation. We affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

In 1988 the Alaska Board of Fisheries (Board) adopted a statewide ban on the use of aircraft for the purposes of locating salmon for commercial taking or directing commercial salmon fishing operations. 5 AAC 39.292 (rep. 7/30/89). In July 1989 the Board repealed the statewide ban and

decided to consider the matter on an area by area basis.

In March 1990 the Board adopted a proposed regulation to ban fish spotting in Bristol Bay on a five to two vote. The promulgated regulation provided as follows: "During open commercial salmon fishing periods no person may use an aircraft to locate salmon for the commercial taking of those fish or to direct commercial salmon fishing operations." 5 AAC 06.378.

■ Fish Spotters filed a complaint alleging that the regulation was unconstitutional and beyond the Board's regulatory authority. Specifically, Fish Spotters contended that the Board acted outside the scope of its authority when it promulgated the regulation. Fish Spotters also contended that the regulation violated several provisions of the Alaska Constitution: the common use clause, article VIII, section 3; the no exclusive right of fishery clause, article VIII, section 15; the uniform application clause, article VIII, section 17; and the equal rights clause, article I, section 1. On cross-motions for summary judgment, Superior Court Judge Larry R. Weeks entered a judgment upholding the regulation. Fish Spotters appeal.[1]

## II. STANDARD OF REVIEW

■ Whether a regulation promulgated by an administrative agency was consistent with the Alaska Constitution is a question of law which requires de novo review. *See McDowell v. State, Dep't of Fish & Game*, 785 P.2d 1 (Alaska 1989).

"[S]ummary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Thus, we review *de novo* an order granting summary judgment." *Gilbert v. State, Dep't of Fish & Game*, 803 P.2d 391, 394 (Alaska 1990) (citations omitted).

## III. DISCUSSION

### A. *The Board Has Authority to Ban Fish Spotting.*

According to Fish Spotters, 5 AAC 06.-378 was "outside the Board of Fishery's authority and [was] not the product of reasoned decision making." Because this appeal is technically moot, we refrain from a discussion of whether 5 AAC 06.378 was the product of reasoned decision making. Rather, we consider only whether the Board has the authority to ban fish spotting in Bristol Bay. We conclude that the Board has such authority.

In conformity with article VIII, section 2 of the Alaska Constitution, the legislature created the Board of Fisheries "[f]or purposes of the conservation and development of the fishery resources of the state." AS 16.05.221(a). "We have previously defined 'conserving' as 'impl[ying]' controlled utilization of a resource to prevent its exploitation, destruction or neglect. 'Developing' connotes management of a resource to make it available for use.' " *Gilbert*, 803 P.2d at 393 n. 1 (alteration in original) (quoting *Kenai Peninsula Fisherman's Coop. v. State*, 628 P.2d 897, 903 (Alaska 1981).

In support of these goals, the legislature has authorized the Board to adopt regulations it considers advisable for "establishing the means and methods employed in the pursuit, capture and transport of fish" and for "regulating commercial, sport, subsistence, and personal use fishing as needed for the conservation, development, and utilization of fisheries." AS 16.05.251(a)(4), (12). The legislature also directed the Board to "establish criteria for the allocation of fishery resources among personal use, sport and commercial fishing." AS 16.05.251(e).

1. This appeal is technically moot. On January 11, 1992, after the parties submitted their briefs to this court, the Board changed its position and voted to allow aerial fish spotting in Bristol Bay. However, both parties believe that we should address the dispute because the issues are capable of repetition, because the mootness doctrine, if applied, may repeatedly circumvent review of the issues and because the issues are so important to the public interest that overriding the mootness doctrine is justified. We agree and therefore consider the issues through application of the public interest exception to the mootness doctrine. *See Peninsula Mktg. Ass'n v. State Bd. of Fisheries*, 817 P.2d 917, 920 (Alaska 1991).

■ Based on the Alaska Constitution, these statutes and our past decisions, we conclude that the Board has the authority to ban fish spotting if such a ban is properly based on conservation, development or allocation goals. The Board's power to regulate fishing means and methods for conservation purposes originates from the Alaska Constitution and is undisputed. Alaska Const. art. VIII, § 2. In prior cases we have recognized the Board's power to allocate between users as it controls utilization of fisheries resources. We have held that the Board's "duty to conserve and develop fishery resources implies a concomitant power to allocate fishery resources among competing users." *Meier v. State, Bd. of Fisheries*, 739 P.2d 172, 174 (Alaska 1987) (citing *Kenai Peninsula Fisherman's Coop.*, 628 P.2d at 903) (approving allocation between commercial and recreational users). We have also held that the Board's authority encompasses the power to allocate a fishery resource between two competing subgroups of commercial users.[2] *Meier*, 739 P.2d at 174 (approving allocation between setnet and driftnet fishers).

■ Because this case is moot we need not determine specifically whether 4 AAC 06.378 was properly adopted. However, we again stress the importance of an adequate decisional document to facilitate judicial review. For a court to determine that an agency acted within its authority in adopting a regulation, it is vital that the agency clearly voice the grounds upon which the regulation was based in its discussions of the regulation or in a document articulating its decision. *Peninsula Mktg. Ass'n v. State Bd. of Fisheries*, 817 P.2d 917, 922–23 (Alaska 1991); *Messerli v. State Dep't of Natural Resources*, 768 P.2d 1112, 1118 (Alaska 1989) *overruled on other grounds, Olson v. State*, 799 P.2d 289, 292–93 (Alaska 1990).

## B. The Regulation Did Not Violate the Alaska Constitution.

Fish Spotters contend that the common use clause[3] obligates the state to guarantee public access to natural resources and that "a *minimum requirement* of this duty is a prohibition against any monopolistic grants or special privileges." *Owsichek v. State Guide Licensing and Control Bd.*, 763 P.2d 488, 496 (Alaska 1988) (Fish Spotters' emphasis). Fish Spotters argue that irrespective of whether the regulation created a monopoly, it unconstitutionally eliminated their "historical" and "long enjoyed" access to the fishery resource. In the context of their common use clause argument, Fish Spotters do not dispute the state's power to regulate the means and methods which may be used in taking fish. Rather, they appear to argue that they have acquired a unique "user group" status defined by their preferred means of accessing the resource.

■ We believe that Fish Spotters' concession regarding the power of the state to regulate fishing means and methods is fatal to their claim. Further, we do not agree with Fish Spotters' fundamental premise that the common use clause obligates the state to guarantee access to a natural resource by a person's preferred means or method. We conclude that the regulation banning fish spotting in Bristol Bay was not constitutionally infirm. Rather, it constituted a permissible limitation of the type traditionally imposed by the state on the means and methods which citizens may employ as they utilize fishery resources.

■ As we noted above, the Alaska legislature has authorized the Board to adopt regulations it considers advisable for "establishing the means and methods employed in the pursuit, capture and transport of fish." AS 16.05.251(a)(4). Through this authority, the Board has prohibited many

---

**2.** If the Board bans fish spotting for the purpose of allocating the resource between competing subgroups of commercial uses, it must comply with AS 16.05.251(e). *Peninsula Mktg. Ass'n*, 817 P.2d at 922. Alaska Statute 16.05.251(e) requires the Board to establish criteria for allo- cation of the fisheries resource among different users.

**3.** Article VIII, section 3 of the Alaska Constitution provides: "Wherever occurring in their natural state, fish, wildlife, and waters are reserved to the people for common use."

means and methods of pursuing and capturing fish in Alaska. In Bristol Bay for example, the Board regulates gill net mesh size and prohibits the use of boats more than 32 feet in length for salmon net fishing. 5 AAC 06.331, .341. Statewide, the Board has banned the use of explosives and poisons in the taking of fish. 5 AAC 39.-150. No person may mount a seine drum or reel aboard a seine vessel. 5 AAC 39.-155. In several locations, no person may commercial fish with any type of trawl gear. 5 AAC 39.165. No one may commercial fish with nets made of monofilament purse seine web. 5 AAC 39.170. Artificial lights may not be used to attract salmon out of closed waters. 5 AAC 39.-175. Like these regulations, the regulation at issue in this case prohibited any person from using a certain means—an aircraft—to assist in the pursuit and capture of salmon.

We simply believe that Fish Spotters' constitutional arguments carry little weight where, as in this case, the Board has exercised its authority by restricting means and methods of access in a manner which applies equally to all citizens.

> We observe initially that, in guaranteeing people "common use" of fish, wildlife and water resources, the framers of the constitution clearly did not intend to prohibit all regulation of the use of these resources. Licensing requirements, bag limits, and seasonal restrictions, for example, are time-honored methods of conserving the resources that were respected by delegates to the constitutional convention.

*Owsichek*, 763 P.2d at 492.

■ Significantly, when the framers of the Alaska Constitution submitted their proposal to the voters of Alaska for ratification, they also submitted for approval an ordinance which prohibited the use of fish traps for commercial salmon fishing in all of Alaska's coastal waters.[4] These framers, who crafted the common use clause and the other provisions raised by Fish Spotters, apparently found no inconsistency between a complete ban on fish traps, a "traditional" tool used for many years, and a reservation of the state's fish, wildlife and waters to the people for their common use.

We see no distinction between the ban of fish traps in coastal waters proposed by the framers of the Alaska Constitution and the ban of fish spotting in Bristol Bay adopted by the Board. Each ban prevented any person from using a certain means of taking fish. Although applying equally to all persons in the state, each ban directly affected only a small number of people who had previously used the banned tool. Each ban precluded a preferred use of the fisheries resource. However, neither precluded all uses of the resource.

Fish Spotters may access the resource in the same manner open to any other commercial fishers. They may participate in industries which support the fishery harvest. They may continue to use their planes to spot fish before an open commercial fishing period and to transport supplies and personnel for commercial fishing clients. In light of these alternative ways Fish Spotters may use the fisheries resource, we cannot conclude that the regulation banning fish spotting violates the common use clause of the Alaska Constitution. Rather, it constitutes a permissible limitation on the means and methods which any person may use to take salmon in Bristol Bay. Fish Spotters contend that they are "users" of the resource and ought not be treated differently from fishers. Fish Spotters argue that in *Owsichek* we made no distinction between hunters and hunting

---

**4.** The full text of the proposed ordinance is as follows:

> As a matter of immediate public necessity, to relieve economic distress among individual fishermen and those dependent upon them for a livelihood, to conserve the rapidly dwindling supply of salmon in Alaska, to insure fair competition among those engaged in commercial fishing, and to make manifest the will of the people of Alaska, the use of fish traps for the taking of salmon for commercial purposes is hereby prohibited in all the coastal waters of the State.

Alaska Const. Ord. 3, § 2.

In 1957, the legislature enacted a statutory prohibition of fish traps, noting that the people of Alaska had "repeatedly and overwhelmingly" voted in favor of such a ban. Ch. 44, SLA 1957.

guides as "users" of the resource. In *Owsichek* we said:

> Admittedly, there is a difference between commercial fishermen and professional guides: a commercial fisherman takes his catch himself before selling it to others for consumption, while a hunting guide does not actually take the game, a privilege reserved for the client. We view this as an insignificant distinction that does not remove professional hunting guides from protection under the common use clause. The work of a guide is so closely tied to hunting and taking wildlife that there is no meaningful basis for distinguishing between the rights of a guide and the rights of a hunter under the common use clause.

763 P.2d at 497 n. 15.

In *Owsichek* we recognized hunting guides as professional or commercial users of Alaska's wildlife resources, based on the nature of their use of the resource. We did not recognize their status as users based on a preferred means or method they used to gain access to the resource. *Id.* at 497.

■ We explicitly reject Fish Spotters' argument that they are a distinct "user group" defined by the means and methods they use to gain access to the resource. In the context of "common use" clause analysis, we have consistently defined "user groups" in terms of the nature of the resource (*i.e.*, fish or wildlife) and the nature of the use (*i.e.*, commercial, sport or subsistence). *See, e.g., McDowell*, 785 P.2d at 8; *Owsichek*, 763 P.2d at 497. Recognition of user groups defined by use of a particular means or method of access would not be in accordance with the views of the framers of Alaska's constitution and would needlessly impair the Board's power and duty to control utilization, development and conservation of fisheries resources for maximum public benefit. *See* Alaska Const. art. VIII, § 2.

Fish Spotters contend that 5 AAC 06.378 violated the "no exclusive rights" clause[5] because it *excluded* fish spotters from the Bristol Bay fishery and because it sheltered [fishers who do not use aerial spotters] against competition from spotter-aided fishermen.

■ Invoking the "no exclusive rights" clause, this court has struck down schemes which granted a special monopolistic privilege to a limited number of individuals. *Owsichek*, 763 P.2d at 498; *see McDowell*, 785 P.2d at 9. However, the challenged regulation was not flawed in this manner because it did not grant a privilege to anyone. A ban on the use of a means of fishing does not equal a creation of an exclusive right or a special privilege. It is true that only those who previously used aircraft to spot fish were directly affected by the disputed regulation. However, this will be the case whenever a regulation is adopted which bans the use of a certain tool for taking fish. When the ban on fish traps was implemented, only people who previously used the traps were directly affected. Although Fish Spotters were clearly affected by the disputed regulation, the regulation did not exclude them from many uses of the resource.

Fish Spotters' argument that the regulation sheltered some fishers against competition from others is wholly without merit.

Finally, Fish Spotters argue that they were denied equal protection of law[6] because the regulation prohibited their access to the fishery which others use and because they were treated differently from spotters in other areas.

Fish Spotters argue that the regulation was void for the same reasons under the

---

**5.** Article VIII, section 15 of the Alaska Constitution provides in part: "No exclusive right or special privilege of fishery shall be created or authorized in the natural waters of the State."

**6.** Article I, section 1 of the Alaska Constitution provides:

This constitution is dedicated to the principles that all persons have a natural right to life, liberty, the pursuit of happiness, and the enjoyment of the rewards of their own industry; that all persons are equal and entitled to equal rights, opportunities, and protection under the law; and that all persons have corresponding obligations to the people and to the State.

more stringent review appropriate under "uniform application" clause [7] analysis.

For the reasons articulated above we are not persuaded by these arguments. The regulation applied equally to all citizens. It did not implicate Alaska's "equal protection" or "uniform application" clauses.

The superior court's summary judgment in favor of the state is AFFIRMED.

---

7. Article VIII, section 17 of the Alaska Constitution provides: "Laws and regulations governing the use or disposal of natural resources shall apply equally to all persons similarly situated with reference to the subject matter and purpose to be served by the law or regulation."