*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| FRANK GRISWOLD, | ) |
| | ) Supreme Court No. S-18608 |
| Appellant, | ) |
| | ) Superior Court No. 3HO-21-00251 CI |
| v. | ) |
| | ) O P I N I O N |
| CITY OF HOMER, | ) |
| | ) No. 7221 – September 20, 2024 |
| Appellee. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Homer, Jennifer K. Wells, Judge.

Appearances: Frank Griswold, pro se, Homer, Appellant. Michael Gatti and Max D. Holmquist, Jermain Dunnagan & Owens, P.C., Anchorage, for Appellee.

Before: Carney, Borghesan, and Henderson, Justices. [Maassen, Chief Justice, and Pate, Justice, not participating.]

BORGHESAN, Justice.

## I.    INTRODUCTION

This appeal arises out of a zoning dispute. A couple that owns a lot with a mobile home added a second dwelling built out of a conex shipping container. The couple then sought and obtained a permit for the new dwelling from the city. An owner of neighboring property challenged their permit.

The core of the dispute is whether the conex dwelling is the kind of use that is permitted outright, or whether it requires a conditional use permit, which is

within the city's discretion to grant or deny. A related dispute is whether the conex dwelling unit is a nuisance under the city's zoning code, which prohibits long-term storage of shipping containers unless screened from view.

The city's zoning board determined that a conditional use permit was unnecessary. The board interpreted the city's zoning code to permit outright a "detached dwelling unit" if it is an "accessory building" to an existing single-family residence. The board found that the conex dwelling was accessory to the existing mobile home because the conex was smaller and less prominent. It also determined that the conex dwelling was not a nuisance because, with the modifications to make it a dwelling, it had lost its character as a shipping container. Reviewing these policy determinations deferentially, we affirm them because they have a reasonable basis.

This appeal also presents numerous procedural issues. Most notably, we conclude that the property owners' permit application should be reviewed for substantial compliance, rather than strict compliance. We therefore affirm the city's decision to grant the permit even though the application did not state the particular zoning classification authorizing their conex dwelling.

However, we vacate and remand the superior court's award of attorney's fees against the challenger. Because fees cannot be awarded for defending against nonfrivolous constitutional claims, and because two of the challenger's constitutional claims were not frivolous, we remand for the superior court to adjust the fee award.

## II. FACTS AND PROCEEDINGS

### A. Facts

Stacy and Scott Lowry own property in Homer's Central Business District. On their property was a two-bedroom, one-bathroom mobile home occupied by a tenant.

In 2020 the Lowrys placed a conex shipping container on their property. They equipped the container with furniture, cooking facilities, sleeping areas,

doorways, and utilities. The Lowrys planned to use the converted conex as a vacation home during their summer visits to Homer.

The Lowrys then sought a conditional use permit for a mobile home park. After a hearing, the City of Homer's planning commission denied their application because the conex did not fit the definition of a mobile home. But the commissioners raised the possibility of permitting the conex as a detached dwelling unit instead, which would not require a conditional use permit.

The Lowrys then applied to Homer's planning department for a zoning permit. The application described the use and square footage of the conex as "Residential 1BR 1BA 360 sq ft." The application did not expressly mention the terms "detached dwelling unit" or "accessory dwelling unit," or the applicable zoning code ordinance.

A planning technician inspected the property, reviewed the application, and issued Zoning Permit 1020-782. The permit was conditioned on a three-hundred-dollar payment to the city. Two hundred dollars represented the standard fee for zoning permits. The additional one-hundred-dollar fee was a penalty for having constructed the conex dwelling before obtaining the permit.

### B.    Proceedings

#### 1.    Commission appeal

Frank Griswold, who owns property in Homer's Central Business District, appealed the planning department's decision to grant the zoning permit to the planning commission. Sometime prior to the hearing a lawyer for the City prepared a proposed stipulation for the hearing procedures before the Commission. Griswold received this document but objected to it. The lawyer's firm later filed an entry of appearance.

The city clerk issued a memorandum to the parties outlining the procedure for the hearing. The procedure was similar to the terms of the proposed stipulation. The procedure allotted Griswold and the City 30 minutes each to present testimony and other evidence, question witnesses, and make oral argument. It allotted ten minutes for

cross-examination and rebuttal argument. The procedure provided 20 minutes for preliminary matters and set a filing deadline for the parties' briefs and witness lists.

Griswold sought to disqualify the chairman of the planning commission, Scott Smith. Griswold challenged Smith's impartiality based upon comments that Smith made during the Lowrys' initial conditional use permit hearing.[1] Smith denied harboring bias in favor of the Lowrys. The Commission denied the motion.

The hearing before the planning commission began with a series of preliminary matters, three of which are relevant to the current appeal.

First, Griswold asserted that it was unclear whom the City Attorney represented. The hearing minutes indicate that three commissioners made statements on the record reflecting that it had been "very clear that the City Attorney [was] representing the [C]ity and not the Commission."

Second, Griswold asked the Commission to compel the Lowrys to testify.[2] The Lowrys attended the March 11 appeal hearing but declined to testify. The Commission declined to compel their testimony.

Third, Griswold argued that the procedures gave insufficient time for oral argument, testimony, cross-examination, and rebuttal. Griswold asserted that he required at least one hour. The Commission did not extend the time for the hearing.

After procedural matters were addressed, the City called both the city planner and a planning technician as witnesses. Griswold cross-examined them both, but did not present witnesses of his own. Then Griswold and the City presented

---

[1] According to the minutes of that hearing, Smith "thanked the applicants for a very interesting topic and he wanted to make them aware that the Commission was trying to advocate for them while addressing the concerns presented by Mr. Griswold and being applicable to city code."

[2] Griswold also sought to compel the city planner, the planning technician, and a city employee to testify on direct testimony. None agreed to be called as witnesses by Griswold.

argument on whether the Lowrys' conex qualified as an accessory detached dwelling unit that did not require a conditional use permit and whether it was a nuisance according to the Homer code. Griswold also argued that the Lowrys' application for a zoning permit was deficient, that the city employee who signed the permit lacked authority to do so, and that the permit itself was void because it was retroactive and violated the Homer code.

After the hearing Griswold moved to disqualify Chair Smith based on comments he had made in an unrelated hearing. The motion alleged that Smith stated, in reference to the hearing on Griswold's appeal: "I giggled at the end of it when I got off, that's for sure." Griswold argued that these remarks demonstrated Smith's "unsuitability to serve as a Homer Planning Commissioner under any circumstances"; Griswold requested that Smith be disqualified from the matter. The Commission denied Griswold's motion.

The Commission upheld the Lowrys' zoning permit. Pertinent to this appeal, the Commission ruled that (1) the Lowrys' permit application was not deficient; (2) the employee who signed the permit had authority to do so; (3) the conex dwelling qualified as a detached dwelling unit accessory to the existing principal residence; (4) the conex dwelling did not violate the nuisance standard in Homer's code because, given the improvements, the conex dwelling no longer constituted a shipping container; and (5) the $100 fee was a sufficient penalty for the Lowrys' late application.

### 2.    Board of Adjustment appeal

Griswold appealed the Commission's decision to the Homer Board of Adjustment.[3] Griswold reprised his claims that (1) the planning technician lacked

---

[3]    At the time of this appeal, the Board of Adjustment was a quasi-judicial body composed of the members of Homer's City Council and the Mayor. *See* City of Homer, Ordinance 08-29 (June 27, 2008), *amended by* City of Homer, Ordinance 21-44(S) (Aug. 9, 2021). Under the ordinances in effect at the time of litigation, the Board had the power to hear zoning appeals from the Commission. *Id.*

authority to issue the zoning permit; (2) the planning department imposed an inadequate $100 penalty for the late application; (3) the conex dwelling was not an accessory detached dwelling unit, and thus required a conditional use permit; (4) the permit application was procedurally deficient; and (5) the conex dwelling was a nuisance under the Homer code.

Griswold also included several procedural claims. Relevant to this case, Griswold claimed that (1) Chair Smith should have been disqualified from the appeal proceedings; (2) the appeal procedures violated his due process rights and Homer's code; and (3) the City's attorney had failed to adequately identify which party he was representing. Additionally, for the first time, Griswold argued that Commissioner Charles Barnwell harbored a disqualifying bias based on his comment at the close of proceedings that the matter had taken "an inordinately excessive amount of time." Griswold argued that Barnwell's comments were a "thinly veiled but nonetheless scathing rebuke" of Griswold, demonstrating Barnwell's belief that Griswold's appeal was a waste of city resources.

The Board ruled against Griswold on all grounds. The Board determined that although the Homer code requires a conditional use permit if a lot contains more than one building dedicated to a "principal use," the code does not directly address a lot containing more than one single-family residence.[4] The Board concluded that a second, detached single-family residence may be either "accessory," which is allowed under a zoning permit alone, or a second "principal use," which would require a conditional use permit.

According to the Board, the key issue was whether the Commission's determination that the Lowrys' conex dwelling was "accessory" was supported by substantial evidence. The Board determined that the Commission's conclusion was

---

[4]   *See* Homer City Code (HCC) 21.18.020(h), (ii); HCC 21.18.030(h).

backed by substantial evidence because the record reflected that the conex dwelling was smaller and less prominent than the existing residence. Therefore, according to the Board, the conex was not a second "principal use" and did not require a conditional use permit.

The Board rejected Griswold's argument that any dwelling categorized as "accessory" must be occupied by the same family residing in the lot's principal residence. The Board noted that the text of the code did not mention such a requirement.

The Board rejected all of Griswold's procedural arguments. It did not expressly address Griswold's bias allegations against Commissioner Barnwell. Its decision contained a boilerplate statement that "[t]o the extent there was a point not discussed in this decision, the failure to discuss an argument should be interpreted as our finding that it was not determined to be material and did not provide a basis for overturning the Planning Commission decision."

### 3. Superior Court Appeal

Griswold appealed the Board's decision to the superior court. Griswold reasserted the arguments he had made before the Board. The superior court rejected them all.

It granted the City's motion for attorney's fees and costs, resulting in an award of $3,566.10 in attorney's fees and $298.96 in costs.

Griswold now appeals the superior court's ruling on the merits and on attorney's fees.

## III. STANDARD OF REVIEW

"When a superior court acts as an intermediate court of appeals, we independently review the administrative decision."[5]

---

[5] *Titus v. State, Dep't of Admin., Div. of Motor Vehicles*, 305 P.3d 1271, 1276 (Alaska 2013) (quoting *Alaska Exch. Carriers Ass'n, Inc. v. Regul. Comm'n of Alaska*, 202 P.3d 458, 460 (Alaska 2009)).

We review an agency's factual findings to see if they are supported by substantial evidence.[6] Substantial evidence is evidence that "a reasonable mind might accept as adequate to support a conclusion."[7]

The reasonable basis standard applies to questions of law that "implicate[] agency expertise or the determination of fundamental policies within the scope of the agency's statutory functions."[8] Accordingly, when the interpretation of a municipal code implicates a zoning board's "expertise in administering zoning ordinances,"[9] we will accept the zoning board's interpretation "whenever there is a reasonable basis for the meaning given by the board."[10]

But we do not defer to zoning board interpretations in all cases. "Where the interpretation of a zoning ordinance presents only a question of statutory construction which does not involve agency expertise or the formulation of fundamental policies," we apply the substitution of judgment standard.[11] Under the substitution of judgment standard, we apply our "own interpretation of the statute at issue."[12]

"We review an award of attorney's fees under [the] abuse of discretion standard."[13] We "will not find an abuse of discretion absent a showing that the award

---

[6]    *Griswold v. City of Homer*, 252 P.3d 1020, 1025 (Alaska 2011).

[7]    *Luper v. City of Wasilla*, 215 P.3d 342, 345 (Alaska 2009) (quoting *Balough v. Fairbanks N. Star Borough*, 995 P.2d 245, 254 (Alaska 2000)).

[8]    *Marathon Oil Co. v. State, Dep't of Nat. Res.*, 254 P.3d 1078, 1082 (Alaska 2011).

[9]    *Griswold v. City of Homer*, 55 P.3d 64, 68 (Alaska 2002).

[10]    *Id.* (quoting *S. Anchorage Concerned Coal., Inc. v. Coffey*, 862 P.2d 168, 173 n.12 (Alaska 1993)).

[11]    *Balough*, 995 P.2d at 254.

[12]    *Marathon Oil Co.*, 254 P.3d at 1082 (quoting *Matanuska-Susitna Borough v. Hammond*, 726 P.2d 166, 175 (Alaska 1986)).

[13]    *Oakly Enters., LLC v. NPI, LLC*, 354 P.3d 1073, 1079 (Alaska 2015); *Griswold v. Homer City Council*, 310 P.3d 938, 941 (Alaska 2013).

was arbitrary, capricious, manifestly unreasonable, or stemmed from an improper motive."[14] But "[i]nterpretation of the constitutional litigant exception to attorney's fees is a question of law, which we review using our independent judgment."[15]

## IV. DISCUSSION

Griswold raises fourteen points on appeal. We address these points in three broad categories. First, Griswold challenges the substance of the Board's rulings: that the Lowrys' conex is an accessory detached dwelling unit that does not require a conditional use permit; and that the structure is not a nuisance because it has lost its character as a shipping container. Second, Griswold challenges the procedures used in this matter. Third, Griswold challenges the attorney's fee award.

### A. Substantive Issues

**1. The Board's conclusion that the conex qualified as a detached dwelling unit, and therefore did not require a conditional use permit, had a reasonable basis.**

The first issue is whether the Lowrys are using their lot in a way that requires a conditional use permit. The answer depends on two sub-questions. First, does the Homer code require a conditional use permit to build a detached dwelling unit that is accessory to a primary residence? Second, did the City have a reasonable basis to conclude that the Lowrys' unit was an accessory detached dwelling unit?

We apply the reasonable basis standard when reviewing the Board's answers to these questions. These questions implicate the Board's "expertise in administering zoning ordinances"[16] and Homer's fundamental land use policies. For

---

[14] *Oakly Enters., LLC*, 354 P.3d at 1079 (quoting *Ware v. Ware*, 161 P.3d 1188, 1192 (Alaska 2007)).

[15] *Pruitt v. State*, 526 P.3d 136, 141 (Alaska 2023) (quoting *Manning v. State, Dep't of Fish & Game* (*Manning II*), 420 P.3d 1270, 1278 (Alaska 2018)).

[16] *Griswold v. City of Homer*, 55 P.3d 64, 68 (Alaska 2002).

example, deciding what kind of building constitutes an "accessory"[17] detached dwelling unit will have consequences for how property owners in the Central Business District decide to use their land. Whether landowners may utilize a repurposed shipping container as a dwelling unit, or whether such a structure should be considered a nuisance, has implications for fundamental land use policies like "the supply and diversity of housing"[18] and "protect[ion of] community character."[19] These considerations go to the core of the Board's zoning competency,[20] so we apply reasonable basis review to its decisions on these issues.

The Homer code contains a list of uses that are "permitted outright in the Central Business District."[21] Among these uses are a single-family dwelling[22] and a mobile home.[23] Another use that is permitted outright is a "detached dwelling unit . . . as an accessory building to a principal single-family dwelling on a lot."[24]

But other uses require a conditional use permit.[25] A conditional use permit is required when erecting "[m]ore than one building containing a permitted principal

---

[17]     HCC 21.18.020(ii).

[18]     City of Homer, Ordinance 11-44(S) (Dec. 12, 2011).

[19]     CITY OF HOMER, HOMER COMPREHENSIVE PLAN 2018, at 4-1 (2018) (outlining the "overall goal[s] of [Homer's] land use policies").

[20]     *See Earth Movers of Fairbanks, Inc. v. Fairbanks N. Star Borough*, 865 P.2d 741, 744 (Alaska 1993) ("[T]he primary purpose of zoning with reference to land use is the preservation in the public interest of certain neighborhoods against uses which are believed to be deleterious to such neighborhoods." (quoting *Circle Lounge & Grille, Inc. v. Bd. of Appeal*, 86 N.E.2d 920, 923 (Mass. 1949))).

[21]     HCC 21.18.020.

[22]     HCC 21.18.020(h).

[23]     HCC 21.18.020(m).

[24]     HCC 21.18.020(ii).

[25]     *See* HCC 21.18.030.

use on a lot."[26]  A principal use is defined as "the use of a lot or structure that is of chief importance or function on the lot."[27]

Griswold argues that the Lowrys' conex required a conditional use permit because it "constituted a distinct single-family dwelling unit" in addition to the existing mobile home on their lot.  In other words, Griswold argues that the existing mobile home and the new conex dwelling each amount to a "permitted principal use" on the lot, requiring a conditional use permit.

The crux of this issue is the relationship between two code provisions. Section 21.18.030(h) provides the general rule that two principal uses on the same lot require a conditional use permit.  Section 21.18.020(ii) creates an exception:  an additional single-family dwelling does not require a conditional use permit when it is a detached dwelling unit that is an "accessory building to a principal single-family dwelling on a lot."[28]

The Board concluded that, "[r]eading these two code sections together and giving effect to each, a detached accessory dwelling unit which is a single-family residence is permitted in the [Central Business District] zone without a [conditional use permit]."  The Board explained that "Griswold's argument that there cannot be two single-family dwelling units on one lot would be inconsistent with the language of and purpose of HCC 21.18.020(ii) which permits an accessory detached single-family dwelling."

---

[26]  HCC 21.18.030(h).

[27]  *See* HCC 21.03.040.

[28]  HCC 21.18.020(ii); *see* HCC 21.03.040 (defining "[a]ccessory building" as "an incidental and subordinate building customarily incidental to and located on the same lot occupied by the principal use or building, such as a detached garage incidental to a residential building"; defining "dwelling unit" as "any building or portion thereof designed or arranged for residential occupancy by not more than one family and includes facilities for sleeping, cooking and sanitation").

This interpretation of the code is reasonable. The code expressly exempts a single detached dwelling unit from the need for a conditional use permit if it is "accessory building to a principal single-family dwelling."[29]

This leads to the second question: did the Board have a reasonable basis for concluding that the Lowrys' conex was an accessory detached dwelling unit? We believe it did.

The Board looked to the Homer code's definition of "accessory building": "an incidental and subordinate building customarily incidental to and located on the same lot occupied by the principal use or building."[30] The code gives the example of a "detached garage incidental to a residential building."[31] Before the Commission, the city planner testified that the Lowrys' conex is an accessory building because it is "smaller and less prominent" than the existing mobile home on their lot. The Commission agreed, concluding that the conex constituted an accessory dwelling unit within the meaning of HCC 21.18.020(ii). The Board affirmed the Commission's decision.

The Board's conclusion is reasonable. Under the Homer code, a detached dwelling unit by definition must be usable as a single-family home. The code allows detached "dwelling unit[s]," and it defines "[d]welling" or "dwelling unit" to mean "any building [that is] designed or arranged for residential occupancy by not more than one family and [that] includes facilities for sleeping, cooking and sanitation."[32] Because both accessory detached dwelling units and principal homes necessarily must include all the basic trappings of a home suited for residential occupancy, it strikes us as

---

[29]    HCC 21.18.020(ii).

[30]    HCC 21.03.040.

[31]    *Id.*

[32]    *Id.*

reasonable for the City to look to the size of the dwelling as an important differentiating factor when deciding whether or not a unit is "accessory."

Griswold disputes that the Lowrys' conex is "subordinate" or "incidental" to the existing mobile home. He disagrees with the City's argument that dwellings may be subordinate or incidental "primarily because of the structures' relative size." Griswold argues that an "accessory building such as a detached garage could easily be larger and/or of greater stature than the associated principal single family dwelling while still being subordinate and incidental to it." He also refers to a passage of the superior court decision in which the court stated that the conex's use "is not incidental nor is it subordinate."

Instead of determining whether a building is "accessory" by considering relative size, Griswold argues that a building is accessory only if it is occupied by the same family that resides in the lot's principal residence. Because the code describes a "detached garage" as an example of an "accessory building,"[33] Griswold argues that to qualify as "accessory" a building must be "designed/intended to be used by the family residing in the principal dwelling unit." Otherwise, Griswold argues, the detached unit "would constitute a (non-accessory) secondary single-family dwelling" requiring a conditional use permit under HCC 21.18.030(h).

We disagree that the Board's interpretation is unreasonable. Griswold does not explain why considering size as one among several factors is unreasonable. The city planner testified that whether a dwelling is "accessory" would depend on factors like size, visual prominence, and whether it was built before or after the principal home. The City's analysis is more nuanced than Griswold acknowledges. The unusual hypothetical Griswold posits (a garage larger than the dwelling) would not necessarily yield an absurd result (a ruling that the garage is not "accessory").

---

[33]    *Id.*

As for Griswold's argument that a structure must be used by the same family occupying the principal dwelling in order to be "accessory," there is no textual basis for this interpretation. Although that might be a reasonable interpretation, it is not the only reasonable interpretation of "accessory" in this context. Many landowners build a second dwelling unit to rent to unrelated tenants to help pay off the mortgage on the property or to supplement income. Interpreting "accessory" to allow this use is a reasonable policy decision for the City to make.

The Commission's interpretation is also consistent with legislative history. Homer's City Council enacted HCC 21.18.020(ii) to "increase[] the supply and diversity of housing" and "promote housing choice by supporting a variety of dwelling options."[34] A nuanced interpretation that considers factors like size, appearance, and when the unit is built gives Homer's planning department more leeway to approve a wider variety of accessory units. The City's interpretation reasonably comports with the ordinance's policy goal of increasing the number of housing options.

It is not our role to second guess the Board's policy judgments. We will defer to the Board's reasonable interpretation of statutes that implicate "fundamental policies within the scope of the agency's statutory functions."[35] Since the Board's approach to deciding when a dwelling is "accessory" to another pertains directly to policy objectives regarding character and availability of housing, we will not reverse the Board's reasonable interpretation. Although Griswold's stricter interpretation of what makes a second dwelling "subordinate" and "incidental" to an existing dwelling might also be reasonable, that does not make the Board's broader interpretation less reasonable.

---

[34] City of Homer, Ordinance 11-44(S) (Dec. 12, 2011).

[35] *Marathon Oil Co. v. State, Dep't of Nat. Res.*, 254 P.3d 1078, 1082 (Alaska 2011).

Lastly, we are not bound by the superior court's suggestion that the Lowrys' conex is neither "incidental nor . . . subordinate." "When the superior court acts as an intermediate court of appeal, this court does not defer to its decision. We will independently review the merits of the administrative determination."[36] It is Homer officials' judgments on this point that are entitled to deference, not the superior court's.

In conclusion, the Board had a reasonable basis for deciding that the Lowrys' conex dwelling was a "detached dwelling unit" functioning as an "accessory building" to the existing mobile home. Therefore, the Lowrys could add the conex dwelling to the lot without obtaining a conditional use permit.

### 2. The Board's conclusion that the conex dwelling was not a nuisance had a reasonable basis.

The next issue is whether the Lowrys' conex dwelling violated the Homer code's nuisance standards. The Homer code provides that "[c]ommercial . . . shipping containers and other similar equipment used for transporting merchandise shall remain on the premises only as long as required for loading and unloading operations, and shall not be maintained on the premises for storage purposes unless screened from public view."[37]

Griswold argued before the Commission that the conex dwelling violated this rule. The Commission disagreed. The Commission noted that the planning technician had visited the conex and observed that it had "finished walls, a kitchen and living area," and other improvements. The Commission noted that, "[a]s was ruled during the September 2, 2020 [conditional use permit] process, [the Commission] concluded the subject structure was no longer a shipping container." The Commission thus found that the conex was not a nuisance.

---

[36] *Balough v. Fairbanks N. Star Borough*, 995 P.2d 245, 254 (Alaska 2000); *see Titus v. State, Dep't of Admin., Div. of Motor Vehicles*, 305 P.3d 1271, 1276 (Alaska 2013).

[37] HCC 21.18.080(c).

The Board agreed with the Commission's finding. It cited the planning technician's description of the conex and concluded that this evidence supported the conclusion that the conex was now a dwelling, not a shipping container used for transporting merchandise.

Griswold challenges the Board's decision. First, Griswold observes that the Commission mistakenly stated that it had previously ruled on this issue during the earlier hearing on the Lowrys' unsuccessful attempt to permit the conex dwelling as part of a mobile home park.[38] He argues that this error rendered the Commission's conclusion unreasonable, undermining the Board's ultimate determination.

This argument fails because the Board, not the Commission, is the final municipal decision maker for purposes of appeal. Griswold essentially argues that an error in the Commission's decision, which was not replicated in the Board's opinion, is grounds for reversal. But this argument misconstrues the purpose of administrative appeals. "[T]he purpose of an administrative review process is to allow an agency 'to correct its own errors so as to moot judicial controversies.' "[39] One of the goals of the adversarial administrative review process is to ensure that permits are "legally sound and error-free."[40] It makes no sense for us to reverse based upon an error in initial administrative proceedings that is not replicated by the ultimate decision maker.[41] The Board's opinion did not err on this point, so there is no basis to reverse.

---

[38]  On this narrow point Griswold is correct:  the Commission never made this prior finding. At the conditional use hearing, the Commission rejected a proposal that would have amended the findings to show that the conex was not used for transportation of merchandise and therefore not a nuisance under HCC 21.18.080(c).

[39]  *Alyeska Pipeline Serv. Co. v. State, Dep't of Env't Conservation*, 145 P.3d 561, 566 (Alaska 2006) (quoting *Voigt v. Snowden*, 923 P.2d 778, 781 (Alaska 1996)).

[40]  *Id.*

[41]  *See Warnke-Green v. Pro-West Contractors, LLC*, 440 P.3d 283, 290 (Alaska 2019) ("[W]e have consistently emphasized the benefit to 'both administrative

Second, Griswold challenges the conclusion that the conex is a dwelling, not a shipping container prohibited by the nuisance standards. He argues that even if the conex has been "converted into a dwelling unit," this "does not obviate the fact that it still constitutes a shipping container" or is designed to be used as a shipping container.

This argument fails too. The Board's application of the nuisance ordinance raises a mixed issue of fact and law.[42] We apply the substantial evidence test to the Board's factual finding that the conex is now a dwelling unit.[43] We apply the reasonable basis test to the Board's determination that a dwelling unit built from a conex is not a shipping container for purposes of Homer's nuisance ordinance.[44] Whether to treat repurposed conex homes as a nuisance pertains directly to the Board's expertise in land use and administering zoning ordinances.[45] "[T]he primary purpose of zoning with reference to land use is the preservation in the public interest in certain neighborhoods

---

autonomy and judicial economy' when an administrative body is allowed the opportunity 'to correct its errors . . . .' " (quoting *Smart v. State, Dep't of Health & Soc. Servs.*, 237 P.3d 1010, 1015 (Alaska 2010))).

[42]     *See In re Hospitalization of Lucy G.*, 448 P.3d 868, 877 (Alaska 2019) ("A truly mixed question of fact and law appears when controlling law is not so definitely defined, but rather involves abstract legal concepts more akin to a general guide for the exercise of considered judgment, so that the determination generally defies ready categorization as either law or fact." (internal quotation marks and alterations omitted)).

[43]     *See Griswold v. City of Homer*, 252 P.3d 1020, 1025 (Alaska 2011) (indicating we apply "substantial evidence test for questions of fact").

[44]     *Id.* (indicating we apply "reasonable basis test for questions of law involving agency expertise").

[45]     *See Marathon Oil Co. v. State, Dep't of Nat. Res.*, 254 P.3d 1078, 1082 (Alaska 2011) (indicating that reasonable basis standard applies to questions of law that "implicate[] agency expertise or the determination of fundamental policies within the scope of the agency's statutory functions").

against uses which are believed to be deleterious to such neighborhoods."[46]  Whether a conex home is the sort of use that should be excluded from Homer's Central Business District is precisely the kind of question that the Board is uniquely qualified to resolve.

Substantial evidence supports the Board's finding that the conex is no longer a shipping container used for transporting merchandise.  The planning technician testified directly to this point before the Commission, and the Board determined that this evidence was enough.  There is no basis to disturb this finding on appeal.

The Board's decision that the converted conex home is not a nuisance has a reasonable basis.  Nothing in the language of the nuisance ordinance prevents the Board from allowing shipping containers to be converted into something different.[47]  A conex dwelling is not so inherently unsightly or offensive to the eye that, when placed in a small Alaska city's central business district, it must be deemed a nuisance.[48]  The Board's conclusion that the Lowrys' conex dwelling unit is not a nuisance is therefore reasonable.

### B.  Procedural Issues

#### 1.  The Lowrys' permit application substantially complied with the Homer Code.

The first procedural issue is whether the Lowrys' permit application should have been denied because it did not comply with the Homer code.  The code provides that the City's application forms shall require "[t]he zoning code use

---

[46]  *Earth Movers of Fairbanks, Inc. v. Fairbanks N. Star Borough*, 865 P.2d 741, 744 (Alaska 1993) (quoting *Circle Lounge & Grille, Inc. v. Bd. of Appeal*, 86 N.E.2d 920, 923 (Mass. 1949)).

[47]  *See* HCC 21.18.080(c).

[48]  *Cf. Maddox v. Hardy*, 187 P.3d 486, 498 (Alaska 2008) (defining nuisance, at common law, as a "substantial and unreasonable interference with the use or enjoyment of real property.").

classification under which the permit is sought."[49]  Griswold argues that the Lowrys'
permit application is void because it did not say "detached dwelling unit" or words to a
similar effect.  But this provision of the Homer code is directory, not mandatory.
Because the Lowrys' application substantially complied with the code, their permit is
valid.

We apply our independent judgment to this issue.  Griswold's argument
requires us to decide whether strict compliance with Homer's zoning permit application
process is mandatory, meaning permit applications are void if they do not follow the
rules perfectly, or directory, meaning an application that substantially complies with the
rules will suffice.  The outcome depends on the text of the code and the intent behind
it.[50]  This is a matter of "pure statutory construction," which does not turn on the
"particular expertise" of the Board.[51]

Griswold argues that the Lowrys violated HCC 21.70.020, which
provides:

> b. All applications for zoning permits shall be on forms
> furnished by the City.  The application shall require the
> following information:
>
> . . .
>
> 4. The zoning code use classification under which the permit
> is sought.

The City's application form did not use the term "zoning code use classification."
Instead, the form said: "For each proposed structure, describe the use & list the square
footage of each floor."  In response to this prompt, the Lowrys wrote: "Residential 1BR

---

[49]    HCC 21.70.020(b)(4).

[50]    *See S. Anchorage Concerned Coal.*, *Inc. v. Mun. of Anchorage Bd. of
Adjustment*, 172 P.3d 768, 771-72 (Alaska 2007).

[51]    *City of Valdez v. State*, 372 P.3d 240, 247 n.48 (Alaska 2016) (quoting
*State, Dep't of Revenue v. OSG Bulk Ships, Inc.*, 961 P.2d 399, 403 n.6 (Alaska 1998)).

1BA 360 sq ft." The Lowrys' application did not mention the terms "accessory dwelling unit" or "detached dwelling unit."

Griswold argues that "[t]he Lowrys clearly did not apply for a zoning permit to construct an accessory dwelling unit per 21.18.020(ii); they applied for a zoning permit to construct a 360 square foot single family dwelling." Since the Lowrys' application listed "residential" use and not "detached dwelling unit" or "accessory dwelling unit" use, Griswold argues that their application violates HCC 21.70.020(b)(4) by listing the wrong code classification. In effect, Griswold argues that the Homer code requires that applicants strictly comply with HCC 21.70.020(b).

Whether a procedural rule requires "strict" or merely "substantial" compliance depends on whether the language of the law is mandatory or directory.[52] "A statute is considered directory if (1) its wording is affirmative rather than prohibitive; (2) the legislative intent was to create 'guidelines for the orderly conduct of public business'; and (3) 'serious, practical consequences' would result if it were considered mandatory."[53]

Considering these factors, we conclude that the requirement of stating the zoning use classification on an application for a zoning permit is directory.

First, the code's wording is affirmative rather than prohibitive. The subsection lists information that the City's application form should require but it does not prohibit the City from granting an application that does not contain all the information listed.[54]

Second, the ordinance appears to have been framed to guide the City in deciding what sorts of information to consider when evaluating an application. The

---

[52]    *S. Anchorage Concerned Coal., Inc.*, 172 P.3d at 771-72.

[53]    *Id.* (quoting *In re Reinstatement of Wiederholt*, 24 P.3d 1219, 1233 (Alaska 2001)).

[54]    *See* HCC 21.70.020(b).

ordinance lists items to be included on the forms "furnished by the City"; the language does not speak directly to applicants' obligations.[55] Moreover, it directs that application forms include "[s]uch additional information as the City Planner shall require to enable the City Planner to determine whether the application satisfies the requirements for issuance of a permit."[56] This catch-all provision suggests that the information described in preceding subsections is similarly intended to assist the city planner in evaluating permits.

Third, serious practical consequences would result from requiring strict compliance. Requiring strict compliance would prevent applicants like the Lowrys from using their property in permissible ways simply because they did not write the magic words (in this case "accessory dwelling unit") on their permit application. And strict compliance is not necessary to protect neighbors like Griswold,[57] who can still challenge whether the proposed use is permissible under the City code. Substantial compliance is sufficient.

The Lowrys' application substantially complied with the code. The Homer code defines "dwelling unit" to include "any building . . . designed or arranged for residential occupancy by not more than one family."[58] The Lowrys' application unambiguously described a residential dwelling — a "[r]esidential 1BR 1BA 360 sq ft" — to be constructed next to an existing mobile home. This application substantially complied with the code's directive that applications identify the "zoning code use

---

[55]    *Id.*

[56]    HCC 21.70.020(b)(9).

[57]    *See S. Anchorage Concerned Coal., Inc.*, 172 P.3d at 772 ("If a statute is . . . directory, substantial compliance is acceptable absent significant prejudice to the other party.").

[58]    HCC 21.03.040.

classification under which the permit is sought."[59]  Therefore we reject Griswold's argument that the Lowrys' permit should have been denied.

### 2. The zoning permit, as interpreted by the Board, authorized a detached dwelling unit.

The next issue is whether the zoning permit the City issued to the Lowrys authorized an accessory dwelling unit.  The permit initially issued by the City did not mention the code provisions governing detached dwelling units or otherwise use words to the effect of "accessory detached dwelling unit."  Instead, when specifying the "Building Use," the permit used the term "Res – Single Family."  Griswold argues that the permit therefore does not permit the Lowrys to have a detached dwelling unit.  We disagree.[60]

Griswold makes two arguments on this issue.  First, he argues that the parties did not have the opportunity to present arguments on this issue during the administrative appeal hearings.  But the minutes of the appeal hearing reflect that Griswold argued that "[t]he application of a zoning permit by the property owner was for a 360 sf single family dwelling not an accessory dwelling unit."  This argument mirrors the issue Griswold now raises in this appeal.  Griswold's assertion that he had no opportunity to argue this issue at the municipal level is contradicted by the record.

Second, Griswold argues that reading the language used in the permit as allowing a detached dwelling unit is "patently ridiculous," because "[s]ingle-family dwelling use and detached accessory dwelling unit use are distinct uses with distinct zoning code classifications; neither use is a subsection of the other."  Since the uses are distinct, Griswold argues that a permit for one use cannot be a permit for the other.

---

[59]  HCC 21.70.020(b)(4).

[60]  We need not decide whether this issue implicates agency expertise because even under the substitution of judgment standard we affirm.

This argument misunderstands the nature of the administrative review process. "[T]he purpose of an administrative review process is to allow an agency 'to correct its own errors so as to moot judicial controversies.' "[61] Adversarial administrative proceedings ensure that permits are "legally sound and error-free."[62]

The crux of Griswold's argument is that the Lowrys' permit is invalid because it does not use the right words. But the Commission and the Board clarified the meaning of the permit in the administrative appeal process. The Commission found that "the subject structure of [the Zoning Permit] is identified as a [detached dwelling unit] per HCC 21.18.020(ii)." The Board affirmed this finding, stating that the conex constituted an "accessory dwelling unit" under HCC 21.18.020(ii) and was therefore permissible on the lot. Assuming the issued permit was initially defective because of its ambiguity, the Board clarified that the permit does authorize the Lowrys to have a detached dwelling unit on their lot. We see no basis to reverse this determination.

### 3. The zoning permit was not invalid for failure to obtain the permit before constructing the unit.

The next issue is whether the Lowrys' zoning permit should have been denied because they built their conex dwelling before obtaining a permit. HCC 21.70.010(b) provides: "The zoning permit required by this section shall be obtained prior to the commencement of any activity for which the permit is required. Failure to do so is a violation."[63] The parties agree that the Lowrys violated this provision. However, the parties disagree on whether the Homer code allowed the city planner and the Commission to penalize the violation by issuing a $100 fine while still approving the permit.

---

[61] *Alyeska Pipeline Serv. Co. v. State, Dep't of Env't Conservation*, 145 P.3d 561, 566 (Alaska 2006) (quoting *Voigt v. Snowden*, 923 P.2d 778, 781 (Alaska 1996)).

[62] *Id.*

[63] HCC 21.70.010(b).

Griswold argues that the $100 fine amounted to a "waiver" of the code. He points to HCC 21.70.030(c), which states: "[N]o City official or employee has authority to grant a waiver, variance, or deviation from the requirements of the zoning code . . . unless such authority is expressly contained therein. Any zoning permit that attempts to do so may be revoked by the City Manager as void."[64]

The City takes the position that Homer's code empowered the city planner to address the Lowrys' technical violation with a fine. It points out that the $100 fine was consistent with the City's fee schedule.

We apply our independent judgment to this issue because whether imposing a fine for noncompliance constitutes a "waiver"[65] of the Homer code falls outside the Board's area of expertise and does not implicate fundamental land use policies.[66] Resolving this issue requires us to construe the term "waiver" in light of the Homer code's related provisions defining the City's powers to punish zoning violations. This is a matter of "pure statutory construction"[67] outside of the Board's land-use expertise.

Section 21.90.090 of the Homer Code provides that it is a violation to "develop, occupy or use any land or structure in any manner for which a permit is required . . . without such a permit."[68] The very next section, HCC 21.90.100, provides that violators of the zoning code are "subject to a fine as set forth in an applicable bail

---

[64]     HCC 21.70.030(c).

[65]     *Id.*

[66]     *See Balough v. Fairbanks N. Star Borough*, 995 P.2d 245, 254 (Alaska 2000).

[67]     *City of Valdez v. State*, 372 P.3d 240, 247 n.48 (Alaska 2016) (quoting *State, Dep't of Revenue v. OSG Bulk Ships, Inc.*, 961 P.2d 399, 403 n.6 (Alaska 1998)).

[68]     HCC 21.90.090(a)(6).

forfeiture schedule adopted by the City" or, "if no fine is set forth" in the schedule, "a fine of not less than $75.00 and not more than $300.00 for each violation."

These ordinances unambiguously authorize the City to punish late permit applications with a fine. The City did so in this case. The City's decision to impose a fine under HCC 21.90.100 did not constitute a "waiver" of the code requirements forbidden by HCC 21.70.030(c).[69]

### 4. The City's planning technician had authority to issue the zoning permit.

Griswold argues that the Lowrys' permit is invalid because the official who signed it, the assistant to the city planner, lacked authority to do so. This argument is specious.

Under HCC 21.90.020(b), the city planner "shall have all functions and may exercise all powers necessary to administer and enforce the zoning code." One such function is reviewing zoning permit applications and granting those that meet all legal requirements.[70] Assistants to the city planner may exercise the city planner's power "under the City Planner's supervision."[71]

Testimony at the Commission hearing suggested that the planning technician who signed the Lowrys' permit acted under the city planner's supervision. The planning technician testified that he consulted with the city planner about classifying the conex as an accessory dwelling unit.

---

[69] HCC 21.90.100 provides that violators are subject to a fine "upon conviction by a court." The language suggests that the City must bring an action in court before it can collect. But this requirement does not prevent the City from threatening action in court, and it does not prevent violators from voluntarily paying fines. The bottom line is that the Homer code contemplates addressing violations with a fine, and the City's decision to use this remedy is not a waiver under HCC 21.70.030(c).

[70] HCC 21.70.030(a).

[71] HCC 21.90.020(b).

On these facts the Commission concluded that the planning technician was working under the city planner's supervision when he signed the Lowrys' zoning permit and therefore that the planning technician acted with authority. The Board affirmed this finding. We agree with the Board. Homer's code allows the city planner to delegate authority to assistants. This is exactly what occurred in this case.

Griswold argues that because the Homer code also allows the city planner to refer permit applications to "other city officials,"[72] the city planner could not delegate this duty to his assistant. We disagree. The additional authority to delegate responsibility to other officials within the municipal government does not limit the city planner's authority to delegate work to his own staff.

### 5. Griswold's bias arguments fail.

The next issue is whether members of the City's planning commission — Chair Smith and Commissioner Barnwell — held a disqualifying partiality against Griswold. Applying our independent judgment, we conclude that that there is insufficient evidence that Chair Smith was biased. With respect to Commissioner Barnwell, we hold that Griswold failed to preserve this issue for appeal.

#### a. There is insufficient evidence that Chair Smith was biased against Griswold.

"Due process gives a party the right to have an impartial tribunal hear the party's case."[73] "Administrative agency personnel are presumed to be honest and impartial until a party shows actual bias or prejudgment."[74] To show bias, "a party must show that the hearing officer had a predisposition to find against a party or that

---

[72] HCC 21.70.030(a).

[73] *AT & T Alascom v. Orchitt*, 161 P.3d 1232, 1246 (Alaska 2007).

[74] *Button v. Haines Borough*, 208 P.3d 194, 208 (Alaska 2009) (quoting *AT & T Alascom*, 161 P.3d at 1246).

the hearing officer interfered with the orderly presentation of the evidence."[75]  A hearing officer's ruling against a party is not enough to show that a hearing officer prejudged facts or was motivated by actual bias.[76]

The Homer code provides that a quasi-judicial hearing officer is partial when (1) "[t]he ability of the member . . . to make an impartial decision is actually impaired," or (2) "[t]he circumstances are such that reasonable persons would conclude the ability of the member to make an impartial decision is impaired."[77]  "[P]ersonal bias or prejudice for or against a party" is one reason that a reasonable person may perceive partiality in a hearing officer.[78]  The Homer code requires members of quasi-judicial bodies to recuse themselves if they are partial.[79]

Griswold argues that three separate instances show that Smith had a disqualifying partiality.[80]  First, he points to Smith's decision during a January 27 preliminary hearing to disallow Griswold from orally arguing against the City's motion to strike Griswold's reply brief.  The January 27 hearing was continued for an unrelated reason.  Griswold had an opportunity to respond to the motion at the March 11 appeal hearing.

Second, Griswold points to an exchange during the March 11 hearing.  During the exchange, the city clerk erroneously stated that Griswold had stipulated to the hearing procedures.  The minutes reflect that "Chair Smith acknowledged Mr.

---

[75]   *Id.* (quoting *AT & T Alascom*, 161 P.3d at 1246).

[76]   *AT & T Alascom*, 161 P.3d at 1246.

[77]   HCC 1.18.020 (defining "[p]artiality").

[78]   *Id.*

[79]   HCC 1.18.048(a).

[80]   Griswold preserved his allegations against Smith.  Griswold moved to disqualify Smith after his Commission appeal hearing.  Griswold also raised his allegations before the Board and the superior court.

Griswold and noted that his opportunity to speak has passed." Griswold asserts that he sought to clarify that he did not stipulate to the hearing procedures, and that Smith's comment and refusal to let Griswold speak demonstrates bias.

Third, Griswold points to a statement that Smith made during an unrelated Commission hearing on a different date. Griswold alleges that during this hearing Chair Smith reflected on the March 11 hearing and stated: "I giggled at the end of it when I got off, that's for sure." Griswold characterizes Smith's comments as ex-parte communication because he made the comments to the city planner.

In the first two instances, Smith merely ruled against Griswold on a procedural matter. Ruling against a party, alone, is not grounds for a finding of partiality.[81] We do not think this warrants disqualification on constitutional grounds or under Homer's code.

There is not enough evidence about the third instance to show that Smith prejudged the issues or was biased against Griswold. Griswold infers in his brief that Smith giggled because he was "pleased with himself for repeatedly silencing Mr. Griswold," referencing the motion to disqualify. But Griswold's motion does not contain enough information or context for us to conclude that Smith's comments created an appearance of bias. Griswold's motion did not allege that Smith referred to him by name, and it is unclear from the limited information provided whether Smith was alluding to Griswold or something else when he laughed. Griswold has not demonstrated that Smith harbored personal bias or prejudged the issues, nor has he shown an appearance of bias. Neither due process nor the Homer code required Smith's disqualification.

---

[81]     *See AT & T Alascom*, 161 P.3d at 1246.

**b.  Griswold failed to exhaust his administrative remedies before attempting to disqualify Commissioner Barnwell.**

Griswold alleges that Commissioner Barnwell was biased based upon comments that Barnwell made at the close of the Commission hearing.  But Griswold did not raise this allegation until his appeal reached the Board. He therefore failed to exhaust his administrative remedies, so this issue is not properly before us.

"In general, a party may not seek relief in a judicial forum until that party has exhausted . . . available administrative remedies."[82]  To determine whether a claim should be dismissed for failure to exhaust, "we must decide whether (a) exhaustion of remedies was required; (b) the complainant exhausted those remedies; and (c) the failure to exhaust remedies was excused."[83]

"Whether a type of claim generally requires exhaustion of administrative remedies is a legal question that we review de novo."[84]  "Exhaustion is required if a statute or regulation provides for administrative review."[85]  Certain "pure issues of law," like constitutional issues and "certain questions of statutory validity, are 'within the special expertise' of the court" rather than the agency.[86]  But "only the purest legal

---

[82]  *Seybert v. Alsworth*, 367 P.3d 32, 36 (Alaska 2016) (quoting *Winterrowd v. State, Dep't of Admin., Div. of Motor Vehicles*, 288 P.3d 446, 450 (Alaska 2012)).

[83]  *RBG Bush Planes, LLC v. Kirk*, 340 P.3d 1056, 1061 (Alaska 2015).

[84]  *Id.* at 1060 (quoting *Winterrowd*, 288 P.3d at 449).  Usually we review "for abuse of discretion a superior court's determination of whether a plaintiff exhausted those remedies or whether the failure to exhaust should be excused." *Id.* (quoting *Smart v. State, Dep't of Health & Soc. Servs.*, 237 P.3d 1010, 1014 (Alaska 2010)).  But where, as here, "[t]he superior court dismissal order does not expressly determine whether [the party] had exhausted his administrative remedies or whether a failure to exhaust should be excused, and therefore does not reflect any exercise of judicial discretion as to those issues," the abuse of discretion standard is inapplicable. *Winterrowd*, 288 P.3d at 449.

[85]  *Winterrowd*, 288 P.3d at 450.

[86]  *RGB Bush Planes, LLC*, 340 P.3d at 1061 (quoting *Doubleday v. State, Com. Fisheries Entry Comm'n*, 238 P.3d 100, 107 (Alaska 2010)).

questions, requiring no factual context, are exempt from the exhaustion requirement."[87] And if a "procedural challenge to agency decisionmaking has simply been dressed in constitutional clothing," then "the complainant must first exhaust administrative remedies."[88]

The Homer code gives parties the opportunity to raise questions concerning the partiality of members of a quasi-judicial body.[89] When a party does so, the challenged member must disclose relevant facts, and the other members vote whether to recuse the challenged member.[90] Had Griswold used this process, we would have a more developed factual record on which to decide Griswold's allegations. Because his allegations do not present a "pure"[91] legal issue, Griswold was required to use this procedure before raising this issue on appeal.

Griswold did not do so. He first raised his allegation of bias against Barnwell in his brief on appeal to the Board.

This failure to exhaust is not excused. "[F]ailure to exhaust administrative remedies is excused where the administrative remedy is inadequate or where the pursuit of the administrative remedy would be futile due to the certainty of an adverse decision."[92] Nothing in the record establishes that Homer's procedures for recusal are

---

[87]     *Doubleday*, 238 P.3d at 107.

[88]     *Id.* (quoting *State, Dep't of Transp. & Pub. Facilities v. Fairbanks N. Star Borough*, 936 P.2d 1259, 1261 (Alaska 1997)).

[89]     HCC 1.18.048(b) ("Any member of [a quasi-judicial body], and any party to a matter before the body, may raise a question concerning a member's partiality, in which case the member in question shall disclose facts concerning the official's possible partiality in the matter.").

[90]     HCC 1.18.048(b), (c).

[91]     *RGB Bush Planes, LLC*, 340 P.3d at 1061 (quoting *Doubleday*, 238 P.3d at 107).

[92]     *Bruns v. Mun. of Anchorage, Anchorage Water & Wastewater Util.*, 32 P.3d 362, 371 (Alaska 2001) (internal quotation marks omitted).

inadequate or that, had Griswold raised his allegations before the Commission, his effort would have been necessarily futile.

Because Griswold failed to preserve his argument that Commissioner Barnwell was biased, we do not address it.

### 6. Griswold's challenges to the Commission's procedures fail.

Griswold challenges various aspects of the procedures used in the Commission proceedings. He argues that the hearing procedures violated his due process rights and the Homer code; that the Fifth Amendment of the federal constitution required the City to deny the Lowrys' permit when they refused to be called as witnesses in his challenge to their permit; and that the City's attorneys violated Homer's code by inadequately identifying their client. Applying our independent judgment, we reject all of these arguments.

#### a. The hearing procedures did not violate Griswold's due process rights or the Homer code.

Griswold argues that the hearing procedures used by the Commission did not allocate him enough time to present his case and that this limitation violated his due process rights.[93] This argument fails because Griswold has not shown that he was harmed.

Procedural due process "requires 'notice and opportunity for hearing appropriate to the nature of the case.' "[94] This includes the right to "proceedings that

---

[93] Neither party takes a position on the threshold issue in these claims — whether Griswold's interest as a property owner in the same zoning district as the conex is "an individual interest of sufficient importance to warrant constitutional protection." *Anderson v. Alaska Hous. Fin. Corp.*, 462 P.3d 19, 25 (Alaska 2020) (quoting *Dennis O. v. Stephanie O.*, 393 P.3d 401, 406 (Alaska 2017)). We do not address this issue either because, even assuming that Griswold's interest does warrant constitutional protection, his arguments still do not succeed.

[94] *Copeland v. Ballard*, 210 P.3d 1197, 1201 (Alaska 2009) (quoting *Carvalho v. Carvalho*, 838 P.2d 259, 262 (Alaska 1992)).

are fair and that have the appearance of fairness."[95] A violation of due process must be alleged "with particularity and a showing of prejudice."[96] That showing must demonstrate "actual prejudice, not merely the 'theoretical possibility of prejudice.' "[97]

Griswold's argument centers around the Commission's procedures during the March 11 hearing. The Commission gave the parties thirty minutes each to present evidence, question their own witnesses, and make oral argument. Each party was given ten minutes to question witnesses called by the other party. Both the city planner and his staff person declined Griswold's invitation to testify on his behalf. As a result the City had thirty minutes to question these witnesses while Griswold had only ten. Griswold argues that he had insufficient time to present his case and that the procedures unfairly limited his opportunity to question the City's witnesses.

Griswold's due process claim fails because he has not shown how these limits actually prejudiced his case.[98] Griswold does not specify what additional evidence he would have produced if given additional time to question the City's witnesses. He also does not explain what additional evidence and arguments he could have provided had he been given more time for oral argument. Therefore he has not shown that his due process rights were violated.[99]

---

[95] *Id.*

[96] *Fairbanks Gold Mining, Inc. v. Fairbanks N. Star Borough Assessor*, 488 P.3d 959, 969 (Alaska 2021) (quoting *Nash v. Matanuska-Susitna Borough*, 239 P.3d 692, 699 (Alaska 2010)).

[97] *Patrick v. Mun. of Anchorage, Anchorage Transp. Comm'n*, 305 P.3d 292, 301 (Alaska 2013) (footnote omitted) (quoting *D.M. v. State, Div. of Fam. & Youth Servs.*, 995 P.2d 205, 212 (Alaska 2000)).

[98] *Id.* (quoting *D.M.*, 995 P.2d at 212).

[99] Griswold also suggests that the Commission's hearing procedures violated the Homer code. But he fails to cite any authority in the body of his brief or otherwise develop this theory. Therefore this argument is waived for inadequate briefing. *See*

For the same reason, Griswold's other claims of error fail. He points out that the City's attorney did not sign the proposed stipulation for hearing procedures and that the City Clerk mistakenly stated that Griswold had agreed to them. But because he does not show that the procedures used prejudiced him, these asserted errors are harmless.

He also challenges the Commission's failure to exercise subpoena power to compel the individuals on his witness list to subject themselves to questioning. He claims the Administrative Procedure Act[100] gave the Commission the power to compel their testimony.[101] But the Administrative Procedure Act does not apply to Commission proceedings.[102] So this argument fails too.

### b. The Commission was under no obligation to draw negative inferences against the Lowrys.

Griswold next argues that "[a]pplicants for zoning permits have an implied duty to respond to questioning in quasi-judicial proceedings involving their application." Griswold asserts the following legal theory:

> Alaska Rule of Evidence 512(d) permits a negative inference to be drawn against a party who asserts the Fifth Amendment in a civil (non-criminal) action. Even though the Lowrys did not assert the Fifth Amendment per se, this court should nonetheless assign negative implications to their refusal to respond to questioning.

This argument is specious. The Lowrys did not invoke the Fifth Amendment. And there is no suggestion whatsoever that they committed a crime. Nor

---

*Casciola v. F.S. Air Serv., Inc.*, 120 P.3d 1059, 1063 (Alaska 2005) ("Even a *pro se* litigant . . . must cite authority and provide a legal theory.").

[100]    AS 44.62.010-.950.

[101]    *See* AS 44.62.430 (providing for agency subpoena power).

[102]    AS 44.62.330(a) (listing state agencies subject to Administrative Procedure Act).

does Griswold specify what "negative implications" the court should draw from their decision to not testify in the zoning permit hearing, except to make a conclusory statement that it should be "fatal to their application."

### c. The City's attorney did not misidentify his client or violate the Homer code.

Griswold next argues that the City's attorney both failed to make clear who he represented and acted inconsistently with Homer's code. The thrust of Griswold's argument is that when different municipal entities play different roles in a legal matter (like hearing officer and executive agency), an attorney must be explicit about which municipal entity it represents when entering an appearance in the matter. He points to HCC 2.16.010, which provides general guidance on the role of the City Attorney. Griswold asserts that the commissioners in this case were actually misled into believing that the City's attorney represented them.

Nothing in HCC 2.16.10 addresses how the City Attorney may identify the client. And the record supports the Board's conclusion that the commissioners were not misled in this case. The attorney told the Commission that he did not represent them. And three commissioners made statements reflecting that it had been "very clear" that the "City Attorney [was] representing the City and not the Commission." Griswold's argument fails.

## C. Attorney's Fees

The last set of issues pertains to the superior court's award of fees. The superior court awarded the City $3,566.10 in fees and $298.96 in costs. The fee award constituted 20% of the total attorney's fees incurred by the City. The court did not explain its reasoning.

Griswold argues that he should not have to pay attorney's fees incurred in defending against his constitutional claims. Generally, courts may not award attorney's fees devoted to civil actions or appeals concerning "the establishment, protection, or

enforcement" of a constitutional right.[103]   There is an exception for frivolous constitutional claims.[104]  In this case the superior court awarded the City 20% of the attorney's fees it incurred without distinguishing between constitutional and non-constitutional claims or determining whether constitutional claims were frivolous.  We conclude that Griswold asserted constitutional claims, and that some of Griswold's constitutional claims were not frivolous.  We therefore vacate the fee award and remand for the superior court to determine what fees are recoverable. [105]

The City defends the superior court's decision.  Acknowledging what it describes as Griswold's "conclusory" due process arguments, the City maintains that Griswold's appeal as a whole does not concern constitutional rights.

This argument misunderstands the constitutional litigant exception to attorney's fees.  The threshold question is whether "each claim"[106] concerns constitutional rights, not whether the overall "action or appeal" does.[107]  The relative number of claims devoted to constitutional rights is beside the point.  If any of Griswold's claims concern constitutional rights, then the court may not award fees for the subset of billable hours "in which [those] constitutional claim[s] [are] implicated in any way," unless the claims are frivolous.[108]

---

**103**     AS 09.60.010(c).

**104**     *See* AS 09.60.010(c)(2).

**105**     We review this issue using our independent judgment. *Pruitt v. State*, 526 P.3d 136, 141 (Alaska 2023) ("Interpretation of the constitutional litigant exception to attorney's fees is a question of law, which we review using our independent judgment." (quoting *Manning II*, 420 P.3d 1270, 1278 (Alaska 2018))).

**106**     *Id.* at 142 (quoting *Manning II*, 420 P.3d at 1283).

**107**     *Id.*

**108**     *Manning v. State, Dep't of Fish & Game* (*Manning I*), 355 P.3d 530, 539 (Alaska 2015) (quoting *Lake & Peninsula Borough Assembly v. Oberlatz*, 329 P.3d 214, 228 (Alaska 2014)).  Conversely, the court may award fees for work in which none of the constitutional claims are implicated in any way. *See id.*

To determine whether a claim concerns constitutional rights, we look to the "source of the right asserted" and not the "source of the rule of law."[109] At least some of Griswold's claims are rooted in the federal and state constitutions. For instance, his allegations of bias against Barnwell and Smith derive from the due process right to "have an impartial tribunal hear the party's case."[110] His argument that the Commission's hearing procedures did not give him sufficient time to question the City's witnesses derives from the due process right to a "hearing appropriate to the nature of the case."[111]

The City next argues that the claims are frivolous and therefore cannot shield Griswold from a fee award.[112] "Similar to our analysis for whether a claim implicates a constitutional right, . . . frivolousness should be evaluated on a claim-by-claim basis."[113] "[T]his framework requires individually determining whether each claim . . . was frivolous and awarding fees only for the work that was attributable to any frivolous claim(s)."[114]

"To determine if a claim is frivolous, the court must apply an 'objective standard of reasonableness,' taking care to avoid stifling 'creative advocacy' or the pursuit of novel legal theories."[115] "In most cases, . . . a claim should not be considered

---

[109] *Pruitt*, 526 P.3d at 142 (quoting *Lake & Peninsula Borough Assembly*, 329 P.3d at 226).

[110] *AT & T Alascom v. Orchitt*, 161 P.3d 1232, 1246 (Alaska 2007).

[111] *Copeland v. Ballard*, 210 P.3d 1197, 1201 (Alaska 2009) (quoting *Carvalho v. Carvalho*, 838 P.2d 259, 262 (Alaska 1992)).

[112] *See* AS 09.60.010(c)(2).

[113] *Manning II*, 420 P.3d 1270, 1283 (Alaska 2018) (citation omitted).

[114] *Id.*

[115] *Pruitt v. State*, 526 P.3d 136, 142 (Alaska 2023) (quoting *Manning II*, 420 P.3d at 1283-84).

frivolous unless the litigant has 'abused judicial process' or 'exhibited an improper or abusive purpose.' "[116]

In this case the Commission's procedures resulted in Griswold having less time to question the City's witnesses than the City had. Although Griswold did not show this procedure prejudiced him, that failure does not make his due process argument frivolous, unless it can be shown that he had an "improper or abusive purpose."[117] The City alleges that Griswold harbors abusive motives in this case, pointing to the many challenges he has made to zoning decisions in Homer. But if Griswold has standing to challenge zoning decisions in the neighborhood where he owns property, it is not abusive or improper to argue for fairness in the procedures used (so long as the legal argument made is not completely without merit).

For similar reasons, we do not think Griswold's allegations of bias are frivolous. His allegations against Barnwell stemmed from comments made at the end of the Commission hearing. According to the hearing minutes, Barnwell characterized the case as "an inordinately excessive use of Commission time." Griswold's allegations against Chair Smith hinged on an instance where Chair Smith allegedly made light of the proceedings. We ultimately concluded that Griswold failed to preserve his allegations against Barnwell and that his claims against Chair Smith did not show a due process violation. But we do not deem the claims frivolous.

However, Griswold's Fifth Amendment argument was definitely frivolous.[118] Giving Griswold's argument a very charitable reading, he asks us to treat the Lowrys as if they had invoked their Fifth Amendment right against self-incrimination by declining to testify in this zoning appeal, then suggests we can infer

---

[116]   *Id.* (omission in original) (quoting *Manning II*, 420 P.3d at 1283-84).

[117]   *See id.* (quoting *Manning II*, 420 P.3d at 1284).

[118]   *See* discussion *supra* Section IV.B.6.b.

unspecified zoning code violations that were "fatal" to their permit. This far-fetched argument is frivolous.[119]

Because we hold that some of Griswold's arguments were constitutional and not frivolous, we vacate the superior court's attorney's fee award and remand for further proceedings consistent with our rulings.[120] In so doing, we reject Griswold's other challenges to the fee award. First, awarding 20% of the City's fees was not "so onerous . . . that it would deter similarly situated litigants from the voluntary use of the courts if not reduced."[121] We have previously upheld larger awards in comparable contexts.[122] Second, redactions in the billing entries submitted by the City in support of its motion for attorney's fees were lawful and appropriate.[123]

## V. CONCLUSION

We AFFRIM the superior court's decision on the merits but VACATE and REMAND the attorney's fee award for further proceedings consistent with this opinion.

---

[119] *See Pruitt*, 526 P.3d at 142 (quoting *Manning II*, 420 P.3d at 1283-84).

[120] *See, e.g.*, *Manning I*, 355 P.3d 530, 539-40 (Alaska 2015) (explaining that "fees may be awarded only for work that would not have been necessary but for a non-constitutional claim; AS 09.60.010(c)(2) applies to work in which a constitutional claim is implicated in any way" and that "[d]efendants seeking attorney's fees for work on non-constitutional claims must 'submit appropriate documentation "to meet the burden of establishing entitlement to an award." ' " (first quoting *Lake & Peninsula Borough Assembly v. Oberlatz*, 329 P.3d 214, 228 (Alaska 2014); and then quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011))).

[121] Alaska R. App. P. 508(e)(4)(B).

[122] *See Griswold v. Homer City Council*, 310 P.3d 938, 943 (Alaska 2013) (upholding award of $11,891 to Homer City Council against Griswold).

[123] *See Gonzales v. Safeway Stores*, 882 P.2d 389, 399 (Alaska 1994) (holding redactions to billing entries to preserve attorney-client privilege "[did] not materially interfere with an understanding of the services performed sufficient for the purposes of an award of costs and fees.").